FILED

13 FEB -8 PM 3:01

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

_____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNEY A. JOSEPH,<br><br>　　　　　　　　　Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>　　　　　　　　　Defendant. | CASE NO. 11cv2884-W (KSC)<br><br>**REPORT AND RECOMMENDATION DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. Nos. 14 & 15] |

　　　　Plaintiff Rodney Joseph brings this action under the Social Security Act ("SSA"), 42 U.S.C. § 405(g), seeking judicial review of defendant Social Security Administration Commissioner's final decision denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). This case was referred for a Report and Recommendation on the parties' Motions for Summary Judgment. [Doc. No. 4; *see* 28 U.S.C. § 636(b)(1)(B)] After considering the moving papers, the administrative record, and the applicable law, the Court **RECOMMENDS** that plaintiff's Motion for Summary Judgment [Doc. No. 14] be **DENIED** and that defendant's Cross Motion for Summary Judgment [Doc. No. 15] be **GRANTED**.

/ / /

/ / /

/ / /

## I. PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on February 4, 2008 and February 7, 2008, respectively, alleging disability due to chemical sensitivities, diabetes, nerve damage to his extremities, arthritis, joint and back pain, edema, and depression. [Administrative Record (AR) at 144-55] Plaintiff alleged the date of onset of his disability was June 13, 2003. [AR at 144] Defendant denied plaintiff's applications at both the initial and reconsideration levels. [AR at 60-64, 69-73, 75-76] Administrative Law Judge (ALJ) Eve B. Godfrey held a hearing on December 9, 2009. [AR at 26-55] Appearing at the hearing was plaintiff, plaintiff's attorney Chadwick Simpson, impartial vocational expert Gloria Lazoff, and impartial medical expert John R. Morse, M.D. [AR at 26-55] Based on the testimony and the documentary evidence, on September 20, 2010, the ALJ issued her decision, finding that plaintiff was not disabled under Titles II and XVI of the SSA. [AR at 11-20] Accordingly, the ALJ denied plaintiff's applications for DIB and SSI [AR at 11-20] and plaintiff filed an administrative appeal [AR at 261-66, 679-80]. The ALJ's finding that plaintiff was not disabled became the Commissioner's final decision on October 12, 2011, when the Appeals Council declined plaintiff's request for review. [AR at 1-5]

## II. RELEVANT FACTS

### A. Background

Plaintiff was born on December 3, 1958. [AR at 144] He completed high school, has a Bachelor's degree, and is able to communicate in English. [AR at 602] Plaintiff's past work experience includes the occupations of machinist, engineering technician, and maintenance mechanic. [AR at 54] Plaintiff injured his left knee in a 1985 motorcycle accident, which led to multiple surgeries. [AR at 582] Further, an accident at work in 2003 left him chemically sensitive, when a co-worker accidentally sprayed him in the face with a solution containing bleach and water. [AR at 583] In addition, plaintiff complains of back and neck pain, diabetes-related issues, arthritis, nerve damage and numbness in his extremities, joint pain, edema, and depression. [AR at 582-83] Plaintiff claims his lower extremity edema and neuropathic pain render him unable to stand for more than 10 to 20 minutes at a time before needing to sit. [AR at 43]

///

**B. Medical Evidence**

**1. Michael Schatz, M.D., Treating Allergy Specialist (2003)**

On June 17, 2003, allergy specialist Michael Schatz evaluated plaintiff for his complaints of chemical sensitivity to bleach. [AR at 296-71] Plaintiff presented with claims that he was sensitive to bleach "since childhood," and that exposure to bleach in a work-related incident in April 2003 led to further sensitivity to bleach and other strong odors. [AR at 269-71] Dr. Schatz performed "ELISA"[1] tests for allergies to common inhalants [AR at 269, 286-87], the results of which were negative [AR at 269]. Dr. Schatz diagnosed plaintiff with a possible bleach contact sensitivity, consistent with multiple chemical sensitivity. [AR at 269] Dr. Schatz suggested a non-prescription allergy medication (Allegra), which plaintiff subsequently used. *Id.* Dr. Schatz advised that some patients improve on selective serotonin re-uptake inhibitors (SSRIs) to help with this sensitivity.

**2. J. Rochelle Parker, M.D., Occupational Medicine Specialist (2003)**

On referral from Dr. Schatz, Dr. Parker examined plaintiff 4 times in 2003. [AR at 272-90] During his first visit on July 7, 2003, plaintiff reported that the Allegra had been helpful [AR at 272], but he refused the SSRI medication recommended by Dr. Schatz, believing it "makes people psychotic." [AR at 272] Dr. Parker's examination of his nasal mucosa revealed it to be slightly erythematous [AR at 273], and she released him to return to work with "[n]o exposure to bleach, glue, or diesel fumes." [AR at 278] On a September 24, 2003 follow-up, plaintiff reported nasal and eye irritation. [AR at 278] Dr. Parker's exam revealed nasal mucosa to be slightly red. [AR at 278] Dr. Parker continued proscription of all exposure to aforementioned substances and fumes. [AR at 278] Plaintiff's November 5, 2003 follow-up was essentially identical, reporting the same symptoms and Dr. Parker releasing him with the same work restrictions. [AR at 284] During his last visit on December 17, 2003, Dr. Parker reported that plaintiff appeared depressed and an examination revealed pink nasal mucosa. [AR at 289-90] Dr. Parker referred plaintiff to his primary care physician for follow-up care. [AR at 290]

---

[1] "Enzyme-Linked Immunosorbent Assay"

### 3. Comprehensive Health Center - Treating Family Practitioners (2005 - 2006)

On September 16, 2005, plaintiff first presented to the Comprehensive Health Center, and continued to visit the Center thereafter approximately two to four times a month. [AR at 325-342] While the notes from those visits are not legible, in a letter dated September 25, 2006, Dr. Anne Kaufhold affirmed plaintiff's diagnoses of diabetes, peripheral neruopathy, hypertension, fibromyalgia, and multiple chemical sensitivities that result in joint pain and swelling of his extremities. [AR at 554] Dr. Kaufhold opined that plaintiff is "disabled and unable to work." *Id.*

### 4. Denise L. Parnell, M.D., Primary Care Physician (2006 - 2010)

Beginning in January 2006, plaintiff visited Dr. Parnell for his primary care needs. [AR at 346-82, 511-24] Plaintiff presented to Dr. Parnell numerous times with a variety of medical problems, including: edema, pain and swelling in his extremities and abdominal, diabetes, hypertension, degenerative arthritis, bloating, body rash, chronic fatigue, irritable bowel syndrome, degenerative joint disease, kidney stones, obesity, subscapular tendonitis, fibromyalgia, neuropathy, and depression. [AR at 352-79] To treat his joint pain, Dr. Parnell administered several injections. [AR at 354-56] Further, Dr. Parnell diagnosed plaintiff's continued left shoulder pain as bilateral ulnar entrapment and referred plaintiff to an orthopedic hand surgeon. [AR at 521-32] On March 9, 2009, Dr. Rodney Henderson operated on plaintiff's left hand. [AR at 520] Post surgery, plaintiff complained of continued pain in his left elbow and wrist, along with tingling and numbness is his right hand and arm. [AR at 515-16] Dr. Parnell diagnosed neuropathy with residual numbness. *Id.*

In September 2006, Dr. Parnell wrote a letter listing numerous medical problems and concluding plaintiff was "permanently disabled" due to the combination of his ailments, and that he is "incapable of tolerating even a low stress work environment." [AR at 355] Dr. Parnell wrote substantially similar letters dated January 17, 2008 [AR at 344] and September 24, 2009 [AR at 507]. In a "multiple impairment questionnaire" completed in September 2008, Dr. Parnell concluded that plaintiff was incapable of performing even a low-stress job and could not hold down steady employment. [AT 562-63] In May 2010, after plaintiff reported falling down due to dizziness, Dr. Parnell advised him to wear his "non-rebreather mask" if he is going to be around

fumes. [AR at 657] As of August 12, 2010, plaintiff was still experiencing sensitivity to fumes and pain in his shoulder and right elbow. [AR at 655]

### 5. Sandra M. Eriks, M.D., Internist and State Consultative Examiner (2008)

On May 9, 2008, Dr. Eriks performed a comprehensive physical evaluation of plaintiff. [AR at 450-54] Plaintiff presented with fatigue and pain in his entire body. [AR at 450] He wore a particulate mask during the exam, insisting that he was bothered by the chemicals in the room. [AR at 450] Dr. Eriks denied that there were any known chemicals present. [AR at 450] Upon physical examination, plaintiff was found to be well-developed and nourished (5'8" and 273 pounds), with normal overall findings, including: normal nose, mouth, and throat; full range of motion in neck, shoulders, and all joints and extremities; normal lungs; regular pulse and heart rate; normal, non-tender abdomen; normal, non-tender back with no pain during straight leg test; and he was neurologically intact with normal motor skills and reflexes. [AR at 452-53]

While plaintiff stated he had "chronic fatigue syndrome" and "fibromyalgia," the examination revealed 0 out of the 18 tender points normally found with fibromyalgia. [AR at 454] Dr. Eriks noted signs of symptom magnification, observing that plaintiff had a normal gait when walking to and from his car, but a "markedly antalgic" gait while in the examination room. [AR at 453] Further, Dr. Eriks observed that plaintiff's use of the particulate mask had "no ability to reduce any chemical exposure," and opined that his use of the mask might be related to conditions "other than physical problems." [AR at 454] Dr. Eriks concluded that plaintiff retained the functional capacity of exertionally medium work, including: capacity to lift and carry 50 pounds occasionally and 20 pounds frequently; to sit, stand, and walk, for 6 hours in each 8 hour workday; unlimited ability to push and pull; no manipulative, visual, communicative, or environmental limitations; and limitation to occasional postural activities. [AR at 454]

### 6. Mounir Soliman, M.D., Psychiatrist and State Consultative Examiner (2008)

On May 30, 2008, Dr. Soliman performed a complete psychiatric evaluation of plaintiff. [AR at 466-71] Plaintiff was pleasant, cooperative, logical and coherent, had normal recall, presented good insight and judgment, and evidenced no loss of contact with reality. [AR 468-69] Plaintiff complained of depression and mood swings due to his physical condition, but denied

taking any psychotropic medical since 1998. [AR at 467] Further, plaintiff reported living with his mother, that he was twice divorced with three children over whom he did not have physical custody, and that he was able to cook, clean, shop, and carry out basic life functions and social interactions. [AR at 468] Plaintiff also disclosed a prior arrest for domestic violence. [AR at 468] Dr. Soliman diagnosed bipolar and depressed type, but opined that plaintiff did not have any work-related mental limitations. [AR at 470]

### 7. Thomas Sabourin, M.D., Orthopedist and State Consultative Examiner (2010)

On March 22, 2010, approximately three months following the administrative hearing, the ALJ sent plaintiff for a second assessment of his residual functional capacity. Orthopedist Dr. Thomas Sabourin conducted a comprehensive orthopedic examination. [AR 582-95] Dr. Sabourin diagnosed medial and lateral instability and mild degenerative joint disease of the left knee; mild right knee chondromalacia; cervical and lumbar strain/sprain; bilateral carpal tunnel and cubital tunnel syndrome; bilateral hand and foot neuropathy secondary to diabetes; and mild arthritis of the right great toe joint. [AR at 586-87] Dr. Sabourin observed that plaintiff had a normal and comfortable posture (sitting and standing), that he rose from his chair without difficulty, that he walked slowly favoring his right leg, but that he otherwise passed all objective tests indicative of strength and range of motion in neck, back, hips, and extremities. [AR at 584-85] Dr. Sabourin opined that plaintiff could lift or carry 20 pounds occasionally and 10 pounds frequently; could stand and walk up to 6 hours, and sit for 6 hours, in an 8-hour workday; could climb, kneel and crouch only occasionally; could work with his left arm above shoulder level occasionally and his right arm frequently. [AR at 587, 588-93]

On June 10, 2010, Dr. Sabourin conducted a second orthopedic examination of plaintiff, at the request of the ALJ. [AR 613-26] Plaintiff presented with significant groaning and gesturing, and claimed to be in "too much [pain]" to allow Dr. Sabourin to complete a full examination. [AR at 615] Dr. Sabourin observed that plaintiff was able to get on and off the examination table and in and out of his chair without difficulty. [AR at 615] Further, Dr. Sabourin observed inconsistencies across plaintiff's two visits, including plaintiff limping on the opposite leg (his right leg limped three months prior) and plaintiff's use of a cane when he previously had no assistance device. [AR

at 617-18] To the extent plaintiff cooperated, he was able to walk heel-toe and had full range of motion in his back and extremities. [AR at 615-16] However, plaintiff refused to move his left shoulder, left knee or left foot. [AR at 616-17] In addition to the physical exam, Dr. Sabourin also reviewed letters provided by Dr. Parnell, Dr. Schatz's report, and the November 2009 MRI of plaintiff's left shoulder. [AR at 617] Dr. Sabourin's original opinion of plaintiff's functional limitations did not change.

### III. ALJ HEARING AND DECISION

#### A. Plaintiff's Testimony

At the December 9, 2009 hearing, plaintiff stated that he suffers from numerous medical ailments, including: chemical sensitivity, diabetes, severe pain in his back, neck, joints, and extremities, depression, arthritis, and edema. [AR at 33-43] Specifically, plaintiff claims the swelling (edema) in his legs is so severe that he is unable to stand for more than 15 to 20 minutes at a time, often forcing him to lie on the ground or in bed using a dresser drawer to elevate his legs. [AR at 43-44] Further, plaintiff claims he can only sit for roughly one hour at a time, and then he has to "lay upside down" for a couple of hours thereafter. [AR at 45] Plaintiff has not worked since 2003, and lives with his elderly mother. [AR at 44] A typical day for plaintiff involves cooking, housework, doing school work online, and errands. [AR at 44]

Prior to exiting the work force, plaintiff held three primary jobs: machinist, engineering technician, and maintenance mechanic. [AR at 32] Throughout the duration of the hearing, plaintiff wore a particulate "mask" to protect against chemicals and fumes. [AR at 31]

#### B. The Written Decision

On September 20, 2010, the ALJ issued a written opinion denying plaintiff's claims for DBI and SSI, finding that plaintiff was not disabled within the meaning of the SSA. [AR at 11-20] First, she concluded plaintiff had not engaged in substantial gainful activity since the date of the alleged onset of disability, June 13, 2003. [AR at 13] Further, the ALJ found plaintiff suffered from the following "severe" impairments, as defined in the Regulations: diabetes mellitus with neuropathy, mild degenerative joint disease, instability of the left knee, mild arthritis, mild chondromalacia of the right knee, carpal tunnel syndrome and cubital tunnel syndrome, mild

rotator cuff tear of the left shoulder, and obesity. [AR at 13, citing 20 C.F.R. §§ 404.1520(c), 416.920(c)] However, plaintiff was found to have no impairment, or combination thereof, that met or equaled an impairment listed under 20 C.F.R. §§ 416.920(d), 416.925, and 416.9296. [AR at 14]

The ALJ found that plaintiff's above-mentioned impairments could reasonably be expected to cause the alleged symptoms; however, she found plaintiff's statements concerning "the intensity, persistence and limiting effects of these symptoms" to be not credible. [AR at 15] The ALJ noted that "[t]here is no objective evidence of fibromyalgia," "there is nothing in the record to support [plaintiff's] allegation [of diabetic seizures]," that his "hypertension is controlled," and that he "is able to take care of his personal needs without assistance." [AR at 15-16]

The ALJ found plaintiff had the residual functional capacity ("RFC") to lift and carry 20 pounds occasionally and 10 pounds frequently; to sit, stand and walk, for 6 hours each, in an 8 hour workday; should avoid ladders, ropes, and scaffolds as well as uneven terrain; could occasionally climb stairs and ramps, kneel, crouch, crawl, stoop, balance, and perform overhead work; could frequently perform gross and fine manipulation with both hands; and should avoid exposure to dust, toxins, chemicals, temperature extremes, and fumes. [AR at 14-19] Given this RFC and the testimony of the vocational expert at the hearing, plaintiff was found capable of returning to his past relevant work as a machinist and as an engineering technician. [AR at 19]

## IV. LEGAL STANDARDS

### A. Evaluating SSI and DBI Claims

To qualify for DBI or SSI benefits under the SSA, an applicant must show that he or she is unable to engage in any substantial gainful activity because of a medically determinable physical or mental impairment that has lasted or can be expected to last at least 12 months or cause death. 42 U.S.C. §§ 423(d), 1382. The Social Security Regulations set out a five-step process for determining whether a person is disabled within the meaning of the Social Security Act. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Batson v. Comm'r of the Social Security Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004). If a party is found to be "disabled" or "not disabled" at any step in the sequence, there is no need to consider subsequent steps. 20 C.F.R. § 416.920.

First, the ALJ must determine whether the applicant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). If not, then the ALJ must determine whether the applicant is suffering from a "severe" impairment within the meaning of the regulations. *Id.* If the impairment is severe, the ALJ must then determine whether it meets or equals one of the "Listing of Impairments" in the Regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the applicant's impairment meets or equals a Listing, the ALJ must then determine whether the applicant retains the residual functional capacity to perform his or her past relevant work. *Id.* If the impairment does not meet or equal a Listing, the ALJ must then determine whether the applicant retains the residual functional capacity to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the applicant cannot perform past relevant work, the ALJ–at step five–must consider whether the applicant can perform any other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

While the applicant carries the burden of proving eligibility at steps one through four, the burden at step five rests on the agency. *Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003). Applicants not disqualified at step five are eligible for disability benefits. *Id.*

### 1. Substantial Evidence

The SSA provides for judicial review of a final agency decision denying a claim for DIB or SSI benefits. 42 U.S.C. § 405(g). A reviewing court must affirm the denial of benefits if the agency's decision is supported by substantial evidence and applies the correct legal standards. *Id.*, *Batson*, 359 F.3d at 1193. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). When the evidence is susceptible to more than one reasonable interpretation, an agency's otherwise reasonable decision must be upheld. *Batson*, 259 F.3d at 1193. Where, as here, the Appeals Council denies a request for review, the ALJ's decision becomes the final agency decision that the court reviews. *Id.* at 1193 n.1.

### 2. Allocating Weight to Medical Opinions

When presented with multiple varying, and often conflicting, medical opinions, no physician's opinion is binding "with respect to the existence of a claimant's impairment or the

ultimate determination of disability." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Instead, an ALJ is to weigh the medical opinion evidence as a whole, considering the entire record. 20 C.F.R. §§ 404.1527, 416.927. Further, an ALJ should not give controlling weight to a treating physician's opinion of limitations unless it is "well-supported" and "not inconsistent" with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

### 3. Credibility of Claimant

In deciding whether to credit a party's testimony about subjective symptoms or limitations, the ALJ must engage in a two-step analysis. *Id.* at 1195; *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Under the first step, the party must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce pain or other symptoms. *Batson*, 359 F.3d at 1195; *Smolen*, 80 3.d at 1281. If this test is satisfied, and there is no affirmative defense that the party is malingering, then the ALJ must determine the credibility of the party's subjective complaints. *See Robbins v. Social Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). In assessing the credibility of a party's subjective complaints, the ALJ may consider such factors as the party's reputation for truthfulness, daily activities, and any inconsistencies in the statements. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997); *Smolen*, 80 F.3d at 1284. The ALJ must not disregard a party's testimony about the severity of pain solely due to a lack of substantiation by objective medical evidence. *See Robbins*, 466 F.3d at 883. However, Congress expressly prohibits granting disability benefits based solely on a party's subjective complaints. 42 U.S.C. § 423(d)(5)(A). ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability.") An ALJ's credibility finding must be properly supported by the record and sufficiently specific to ensure a reviewing court that he or she did not "arbitrarily discredit" a party's subjective testimony. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

### IV. DISCUSSION

Plaintiff argues there was no substantial evidence to support the ALJ's decision, particularly the weight given by the ALJ to the medical opinions of Dr. Parnell and Dr. Sabourin. Plaintiff also argues that he should have had an opportunity to cross-examine Dr. Sabourin. The

Court disagrees. Plaintiff disregards the ALJ's clearly-stated weight of consideration given to the testimonies of Dr. Parnell and plaintiff, the reports of other medical experts, and the entirety of plaintiff's medical record. [AR at 11-20] In this case, the ALJ methodically evaluated the DBI and SSI claims and provided clear and convincing reasons for rejecting plaintiff's subjective claims and Dr. Parnell's opinions regarding plaintiff's limitations and disability determination. Further, Dr. Sabourin was a non-testifying expert who twice examined plaintiff and submitted a report at the request of the ALJ. His report was properly considered within the context of the entire medical record and plaintiff had a full and fair opportunity to respond to the findings contained in the report.

With respect to her reasons for giving "little" weight[2] to Dr. Parnell's testimony, the ALJ explained that Dr. Parnell's assessment appeared to merely summarize plaintiff's subjective complaints, which the ALJ found less than fully credible. [AR at 17] Reports which summarize a claimant's "quintessentially subjective complaints are not a sufficient basis of support for a disability determination." *Ryan v. Soc. Sec. Comm'r*, 528 F.3d 1194, 1205-06 (9th Cir. 2008). The ALJ found that the level of plaintiff's pain noted by Dr. Parnell "is what claimant sets it at, not her independent finding." [AR at 17] An ALJ may reject a physician's finding that is premised on a claimant's properly discredited subjective complaints and is unsupported by the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216-17 (9th Cir. 2005).

Regarding plaintiff's credibility, the ALJ found that plaintiff had made numerous statements and representations that were exaggerated, untruthful, and inconsistent. In her written opinion, the ALJ provided a long list of reasons for discrediting plaintiff. [AR at 16] First, plaintiff falsely told a health care provider in 2006 that her boss said she should transfer plaintiff's treatment. [AR at 322-23] Second, plaintiff refused to take his diabetes medication, but requested a letter stating the medication did not work. [AR at 322-23] Third, in May 2008, plaintiff walked with a significant limp during an examination, only to be observed walking with a normal gait and

---

[2] Plaintiff incorrectly asserts that the ALJ gave "no" weight to Dr. Parnell's opinions. [Doc. No. 14, p. 16] While plaintiff may disagree with the conclusion reached by the ALJ, the Administrative Record reflects that the ALJ did consider these opinions but gave them "little" weight.

no limp in the parking lot after the examination. [AR at 453] Lastly, from one visit to the next, Dr. Sabourin noted that plaintiff's limp alternated legs. [AR at 584, 617-18] This type of symptom exaggeration, on its own, renders a claimant not credible. *See Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). As stated above, an ALJ may reject a physician's finding that is premised on a claimant's properly discredited subjective complaints. *Bayliss*, 427 F.3d at 1216-17. Plaintiff's argument that Dr. Parnell's opinion, as treating physician, is entitled to great weight lacks merit because the treating physician's opinion is not binding on the ALJ if it is unsupported by the entire record and is based on unreliable information. *Batson*, 359, F.3d at 1195.

Further, the ALJ properly considered the report and opinions submitted by state consultative examiner, Dr. Sabourin. Dr. Sabourin, an orthopedic expert, examined plaintiff twice and provided comprehensive findings that were both detailed and specific. [AR at 18] His report constitutes substantial evidence. *See* 20 C.F.R. §§ 404.1527(d)(1), (3), (5) (report by a specialist in his or her area of expertise is generally accorded greater weight than report from a non-specialist). Plaintiff's argument about a right to "cross-examine" Dr. Sabourin about his report fails. While Dr. Sabourin did not testify at the September 20, 2010 hearing, plaintiff had a full and fair opportunity to respond to Dr. Sabourin's reported findings, and the ALJ did not rely solely on Dr. Sabourin's report in drawing a conclusion. Rather, the ALJ relied on the record as a whole. [AR at 128-129]

The ALJ's comprehensive discussion of the entire record, including her analysis of the reasons plaintiff provided in support of his position, demonstrates that she considered the record as a whole. *See Gallant v. Heckler*, 753 F.2d 1450, 1455-56 (9th Cir. 1984)(in determining existence of substantial evidence a reviewing court must consider both evidence that supports and detracts from ALJ's conclusion). Further, the ALJ provided clear and convincing reasons for accepting certain medical opinions (including testifying medical expert, Dr. Morse), and rejecting a portion of plaintiff's testimony and some of Dr. Parnell's medically unsupported findings. Since evidence in the record supports the ALJ's decision, the Court will not second-guess that decision. *See Thomas*, 278 F.3d at 604.

///

## VI. CONCLUSION

Based on the preceding discussion, this Court concludes that the ALJ's denial of benefits was supported by substantial evidence and was free of legal error. Therefore, the Court **RECOMMENDS** that plaintiff's Motion for Summary Judgment [Doc. No. 14] be **DENIED** and that defendant's Cross Motion for Summary Judgment [Doc. No. 15] be **GRANTED**.

This Report and Recommendation ("R&R") is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1). Any party may file written objections with the Court and serve a copy on all parties on or before **within 14 days of being served with a copy of this R&R**. The document should be captioned "Objections to Report and Recommendation." Failure to file objections within the specified time may affect the scope of review on appeal. *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991).

Date: February 8, 2013

KAREN S. CRAWFORD
United States Magistrate Judge